The next case is Golliday v. McDonough, No. 22-1619. Mr. Raven, when you're ready. Good morning. May it please the Court, Sean Raven for Tony Golliday, veteran. Mr. Golliday filed a claim for compensation for a fractured right ankle and a right knee disability. He filed his claim with the Department of Veterans Affairs seeking compensation. At the time that he filed his claim, it was unknown that the Department of Veterans Affairs and the government could not locate and would not be able to locate his complete service medical records. They had a duty to have his service medical records in order to confirm his injuries in service. They breached that duty because they could no longer find them, and as a result, he could not prove that he suffered a fracture to his right ankle and injury to his right knee in service. The issue before the Court is whether or not under 1154A and 5107B, the Department of Veterans Affairs can rely upon a VA medical opinion which relies upon the absence of service medical records for negative substantive evidence. Well, that medical opinion didn't rely solely on the absence of medical records, correct? That's correct, Your Honor, solely, but even if it relied in part on the absence of service medical records, it's still relying upon the absence of those records for a negative inference, saying that if they aren't there, then that's just more support. If you add more support, that just taints the entire medical opinion, and that's the purpose. And the argument is very similar to A-Z and A-Y, that that's not pertinent medical evidence. It can't be pertinent medical evidence because the absence of service records is never pertinent medical evidence. So even if it was like, oh, and by the way, because he doesn't have service medical records to show that he had a right ankle fracture in service or a right knee injury in service, that further supports my opinion that the current disabilities are not related to service. But didn't the Board and the Veterans Court assume that there was an injury in service? Yes, they did, but assuming an injury is very different than assuming or finding that a person fractured their ankle. If you fracture your ankle in service, after service you still have that right ankle fracture. But the medical evidence was to the effect, and correct me if I'm wrong, to the effect that whatever injury might have occurred in service was resolved, and therefore the current injury, there's no nexus to it. The medical opinions relied upon by the Board and by the Court, affirming the Court, were to the effect that any injuries in service resolved prior to separation of service or they would have been noted on a separation examination. The problem with that is that once you fracture an ankle or fracture any bone or fracture your spine, you still have that fracture after service, even after you separate. So even though the fracture is healed, you still have a fracture. You can get service connection for a healed fracture because as you grow older, you can still get free VA care for that fracture, free medicine, and also get compensation as it gets worse. In this case, when you consider that a condition like a fracture has healed, that's true at the time of separation, but there's still a fracture. And even the Secretary would concede on questioning that a fracture in service is still a fracture after service, and you're entitled to compensation for that. If you can show that it was connected to a current disability. But the current disability is a healed fracture, residuals of a healed fracture. So if you have a healed fracture, you still have the same disability. So, for example, for the right ankle fracture, if he claimed that he fractured his ankle, and as he said, he had x-rays from service, and he also had a cast. If that's there, that's evidence of a fracture of his right ankle. So for the examiner at that current point, post-service, for the VA examiner to say, well, yes, he injured his ankle, he had a fracture in service, and he has a healed fracture after service. That condition would still be service-connected. The question of how much disability rating he would get would depend on the circumstances. And if it got worse. But he would be entitled to both compensation, medical care, as well as any type of drugs or medicine or pharmaceuticals to treat that. But what does the absence of his medical records during service have to do with the questions you just described? When the VA examiner relied upon the absence of service medical records to support his opinion that there's no current link to current disability because there was no disability in service, that continued after service. For example, looking closely at the... But that's the question, whether there was any disability that might have been incurred in service that might have been resolved at the time of separation is now causing the current medical problem. That is a question about... The question is whether or not any current disability is related to a disability in service. So the fractured ankle... If there's a fracture in service, the person will have a fracture after service, and they should be compensated for it. It seems to me that what you're arguing for is some sort of a per se rule that you can never, ever even allude to the absence of medical records during service when assessing the entitlement to some compensation. That's too extreme. You can say there are no medical records. The medical records have been lost and are unavailable. And in the absence of that, we concede that the veteran suffered an injury in service. But when you concede... Can you go the other way, though? What if you have testimony from three different doctors that have examined him, look at all the evidence that's available, and say, there's no way this occurred during service. And then they go on and say, and there's no evidence in the records that we've covered that this occurred in service, even though they're relying on the testimony, the positive testimony of all the three doctors. Let's say... Let me make the hypothetical even more extreme so we're not going to quibble about it. Every single piece of evidence suggests that the injury did not occur in service. Every piece of positive evidence. And there has been some loss of service records. And the Board says, and there's no evidence in the service records that this occurred. Is that a legal violation? I would say, unfortunately, you're referring to the very far extreme. I think you can point out... Because I want to know what your legal rule is and whether we're really arguing about a legal issue or whether we're arguing about application of a legal rule to the facts, which you know we don't have jurisdiction over. I understand the extreme part of the argument and your hypothetical. I wouldn't say that a rule has to be fashioned to be that extreme. In the event that service medical records are lost, their absence cannot be relied upon as a basis, either wholly or in part, as a rationale to support a medical opinion. But they can be noted. So they can be noted, though? They can be noted, but they can't be relied upon. So here's the problem you have when you say that, and I appreciate you giving me that candid answer. Doesn't that run us into the fact of whether the Board or the Veterans Court here relied on the absence as a negative inference or whether they just noted it? And isn't that application of law the fact? In this particular circumstance, there is no law currently, there is no rule of law that follows like AZ&AY or Buchanan that says that the reliance upon the absence of service medical records... No, no, I get it. But AZ&AY, I mean they're helpful to you, but they don't resolve this case because there it was very clear that the Board or whoever is the ultimate decision maker, I don't remember the exact facts, relied on the absence of a report to show that there was no stressor. Is that the right thing? And so there was no dispute over, oh, well, there's other evidence showing that this didn't happen. They relied on that specific absence of a report during service to show that there's no stressor. That's not... I think even you would concede that they relied on some positive evidence from doctor testimony and stuff to show no occurrence. You just say that it was wrong of them to go on and say, and the service records don't have this. This is not a case where the only evidence is a negative evidence, right? No, this is not the case where they solely rely upon the absence of service medical records to say that he didn't injure, he didn't fracture his right ankle in service. That would be wrong. Sure, sure, if they said that, that would be an easy case and I'm sure we probably wouldn't be here today. But it's a more difficult and nuanced case to say that instead of just noting the absence of service medical records, which is part of medical history, an examiner can't use that as a basis for relying upon to support their opinion. So an examiner can't say, and by the way, in support of my... And this is... But, I mean, you made that argument, right? And the Veterans Court said that's not the basis for their opinion. Yes, and that's why it's wrong. But that's application of law to fact. No, it's the rule of law. They didn't agree. They said that this wasn't raised by the argument or this wasn't raised in this case. And I believe this clearly is raised in this case. It's not necessarily application of rule of law. Can you show me in the Veterans Court opinion where they articulated an incorrect legal interpretation on this point? Page 6 of the appendix. Section D, right ankle disability. We count 1, 2, 3, 4, 5, 6, 7 lines down. In the center it says, yet the examiner's opinion did not rely on that silence alone. But if the examiner's opinion relied on that silence in any way... But it was silenced in the separation exam. It's not silenced as in records are missing. It's silenced in the sense, in my way I read this, it's silenced in the absence of the service records. I think it's saying that the previous sentence, the examiner also cited appellant's separation exam, which is in the record, right? Right? Separation exam is in the record. Yes, but the sentence before that is... That showed no history or complaints of a right ankle injury. Isn't that the silence that the Veterans Court is referring to, the silence in the separation exam? No, Your Honor, I would disagree. I'd say the silence before, respectfully disagree. It's the sentence before. The examiner stated that the appellant's service treatment records did not document a right ankle injury, and the examiner further noted that the body statement of the appellant submitted was silent under right ankle injury. The examiner also cited appellant's separation examination showed no history or complaints of right ankle injury, yet the examiner's opinion did not rely on that silence. I happen to think it's referring to silence in things that actually exist, documents that actually exist. But what about Judge Hughes' point? Do we have jurisdiction to answer that question as to what the Board is referring to there? It's a rule of law, just as an A-Z and A-Y, and it's a very simple rule of law. In the absence of service medical records, VA cannot rely upon that absence, or VA examiners cannot rely upon that absence to support an opinion in any way. You're arguing for a per se rule. You said a moment ago that it's okay to note it. Yes, it's okay to note it, but they can't rely upon that. It's a nuance of noting versus relying upon. I believe I've gone into my rebuttal time. Sure, and we ask a lot of questions on this story. But, yeah, let's hear from you. Thank you, Your Honor. May it please the Court. I think part of the issue here is just some general misunderstandings as to what the Board and the Veterans Court was doing. There was a decision made back in 2017 where the medical examiner and then the Board did rely upon the absence of service treatment records in order to support their finding that Mr. Galladay did not suffer any injury in service. That was reversed by the Veterans Court. It was remanded to the Board, and the Board got another medical examination and an opinion from the medical examiner. And as a result of that process, they corrected that error that Mr. Galladay is asserting now. They did not rely in any way on the absence of records to support any finding. In fact, they said we note, as has been discussed, we note that there was an absence of records. But we do have some records. We have his separation examination. We have some hospital treatment records from when he was in service just before separation, when theoretically this injury would have already occurred. And we can look in those places and see that there was no indication in those records of any ongoing issues or concerns, no pain, no injuries reported, no continuing instability of the joints, nothing like that. And so the decision reached by the Board was to say, in the records we do have available, there is no indication that whatever injuries he may have suffered, which we assume were credible and we assume that all the testimony and lay evidence he provided was accurate and reliable. Whatever injuries he did suffer at the time he was in service did not appear to be continuous or chronic or in any way continuing to impact his health at the time of his separation. And that is the absence that is being referred to. And so I agree with Judge Stark's interpretation of the Veterans Court's decision. I would also point back to a similar reference made in the Board decision that is subject to Appeal on Appendix 28 where they make a similar statement. At the top of the page, it is clear that he, referring to the medical examiner in the revised 2019 medical examination report, did not base his conclusions solely on the absence of treatment evidence that he took into account in the lay statements and offered conclusions about the likely etiology of the current disabilities. That statement comes at the end of five or six pages of a very, very thorough summary of all of the affirmative evidence that was in the record, which begins all the way back on Appendix 23, noting that although most service treatment records are unavailable, records from a December 1982 hospitalization for an unrelated matter and the Veterans separation physical examination are in the record. You agree that they can't rely on a negative inference from records to support their decision, right? We do not disagree in the way that the Veterans Court or the Board handled this case, and that's the decision they reached. So if the Veterans Court had said, well, here's all this positive evidence of why he didn't suffer an injury, but we're not going to reach that because there's no evidence in any service records to show an injury and rely, so they rely solely on the lack of evidence of service injury, that would be a problem. I don't disagree with that, Your Honor. It's tough to say that in the abstract because we don't have that decision. The Veterans Court, in our view, reached the right decision. So I don't want to say- That would bring it much closer to AZ in those cases. It would, Your Honor, and I think in those cases you did have a situation more, as Your Honor was suggesting, where there was some affirmative evidence, probative, relevant, but the Court, nonetheless, or the Board and then the Veterans Court affirmed, saying that, well, but we have this absence of any record, and so we're going to weigh that as a countervailing piece of evidence against the affirmative evidence. Here, none of that weighing occurred. There was simply a- I think there's clearly a distinction between evidence as in AZ where some alleged injury was not reported and the lack of evidence that, in this case, where the service records are completely missing. So on the one hand, you have- there is some evidentiary value to the fact that there are medical records that do not show an injury during a particular time period in question as compared to the records are missing, where you don't know what they say, positive or negative. So I see. It seems to me that's a distinction that gets blurred in some of these discussions. Yes, it is, Your Honor. And I think in this case, the Veterans Court appropriately made that distinction. As I acknowledged earlier in the proceedings here, there was a decision made by the Board that the absence of records at all was potentially relevant to evaluating whether the Veterans suffered an injury. The Veterans Court reversed, and the Board appropriately reconsidered and reversed its finding on that point and said we will assume that he did suffer injury because we do have his own lay statements. We have Buddy's statements. We have corroborating evidence from family and friends suggesting that he suffered injuries in service. And so relying on that, weighed against, as the Board noted, essentially nothing as a countervailing fact. We will make the finding that he is established by preponderance of the evidence he did suffer these injuries in service. But there's still the nexus question to consider. Even though he has an injury, that doesn't necessarily mean that his current disabilities are medically related to that injury. And the Board went out of its way to note that you cannot establish a medical nexus through lay testimony, particularly in a complicated set of joint injuries like these. You do need some medical evidence establishing the nexus that the current pain, the ultimate knee replacement that he had, was in fact related to an injury he suffered in service. And the other thing I'll point out... So what about Mr. Ryburn's point that if you accept that he suffered an ankle injury, that he... I take it your response is going to be, this is not what he's seeking here. He's not just seeking a service connection for an ankle fracture, right? So that's one point where I think there's... I mean, if the Board did accept that he had an ankle fracture... That's a factual distinction that I think is incorrect. They didn't accept that he had a fracture. Okay. They accepted he had an injury. Okay. But they went out of their way to note that the medical examinations that were conducted post-service, beginning in 2015, reviewed X-rays, current X-rays that were taken, and those X-rays showed nothing that indicated a prior fracture. Okay. So even if you have a fracture, no matter how many years ago, even in childhood, it's still going to show up in some way on a current X-ray. There's going to be some residual imagery that will show some injury and fracture that occurred in the past. The X-rays that were taken didn't show that. Just help me on that. Why is that not a problem for you? I had thought, coming in here, that the Board accepted and credited Mr. Galladay for having the injury that he alleged he had suffered in service. I didn't understand there was a distinction between is it just an injury or is it a fracture? I thought that whole first part of the three-prong thing he has to show was just established in his favor because we don't have the records, so we have to just assume, essentially, that he did suffer precisely the injury that he says he did during service. You're now saying, no, the Board really didn't go that far, and doesn't that mean the Board somehow is relying on an absence of records? No, it's not, Your Honor, because it's relying on the affirmative medical evidence that shows no fracture. And I think part of the issue, too, is that Mr. Galladay was not necessarily internally consistent over the years of his reporting as to what precise injury he did suffer. While he was in service, most recently he's claimed it was a fracture, but earlier he focused more on the knee injury and a knee sprain or some sort of ligament tear. But in this case, the Board went out of its way to say, we're assuming that he suffered knee and ankle injuries. We're not questioning that. He has provided competent lay evidence to establish he suffered those injuries. The nature of those injuries, to the extent they can be determined after the fact, the Board pointed out that he had current x-rays showing no historical injury. So that's, again, not omission evidence. That is affirmative evidence. If you have an x-ray, if any of us have an x-ray taken today, they will show every single fracture you have ever suffered over your life. That's just the way our bones heal. And so the Board specifically said there is no evidence in the record to show that he had a fracture in the past. So we're not going to credit that portion of his testimony. I do want to be fair and acknowledge that there was a prior medical examination report in 2008 where there was a medical examiner who did offer an opinion that Mr. Gallaudet did suffer a fraction. The Board addressed that in its decision and noted that it appeared from the examination report in 2008 that the medical examiner was not actually looking at any current or historical x-rays themselves, that the examiner was relying upon Mr. Gallaudet's self-report that he suffered a fracture in the past and that Mr. Gallaudet reported he had x-rays showing a fracture. But the 2015 examination very clearly showed a current x-ray taken, and so the Board found that that was substantially more persuasive and relevant as evidence. And the other point I would note here, because I do think it's just relevant to the holistic determination in this case, one of the things that the Veterans Court has acknowledged, the Board acknowledged here, is that if there are missing treatment records from service that VA itself or the military has not retained, that there is a heightened duty to assist the veteran. There's a heightened obligation on the part of VA to help the veteran develop the record and find alternative sources of information to attempt to corroborate the claims. And that was done here. The problem is that what happened here is in many ways what disproved his claim. Mr. Gallaudet multiple times suggested that he had sought treatment shortly after his discharge  and that they would confirm that he was, in fact, undergoing a chronic knee and ankle condition after discharge. And so VA was the party that went out and sought his treatment records from Cook County Hospital for an extended period throughout almost the entire 1980s. And they received relevant records. They received his full treatment record from Cook County Hospital. What it showed was that he, in fact, suffered the injury he claimed four years after discharge in 1987. When he was admitted to the hospital, he stated that the injury had occurred just a few days before, and then his subsequent VA treatment records seemed to all be downstream of that fairly substantial knee injury that he suffered in 1987, four years after he was discharged. So VA went out of its way here to do everything it could in an attempt to corroborate and support Mr. Gallaudet's claim that his injury in service was connected to his current condition. Unfortunately, what they found was that the records that he claimed existed demonstrated fairly conclusively that his injury was not related to his service. It was a post-service injury, and that's what caused his current knee and ankle conditions. Unless there are any further questions, we'll ask that the Court affirm or reverse. Oh, I'm sorry. Excuse me. Affirm or dismiss. Thank you. Three minutes. Page 227 of the appendix. Page 227 of the appendix is a document. It is an examination conducted on September 15, 2008. On the bottom of that page is a section marked Diagnoses. Number two says healed right ankle fracture. X-rays show a small degenerative spur on the inferior tip of the medial malleus. This study is otherwise unremarkable. Does the Board address that? The Board addresses this and says that the examiner's rationale was lacking for his opinion, and later VA asked that this opinion be withdrawn by the examiner, and the examiner provide a new opinion because the service medical record did not show a fracture in service. In fact, VA demanded that the examiner write a new opinion, and that's in the record as well. Mr. Gallaudet claims that he fractured his right ankle in service. The absence of service medical records is not pertinent evidence. This medical record by the doctor on 2019 shows that he read the X-rays and diagnosed a fracture of the right ankle. Fractures, as the Secretary said, don't disappear. You have a fracture, they heal, and they stay with you for life, and they show up on X-rays later on in life. When you have the absence of service... Isn't there other medical evidence that says there is no fracture? That is correct. By the same examiner who provided the tainted opinions. Well, that you didn't argue to us. I didn't. I mean, I understand whether there was some improper pressure or something that would result in a violation of law that we could address isn't in the briefs. You're arguing now that there's two different pieces of evidence. One says he has a fracture, one says he doesn't. We can't touch that, can we? No, I wanted to come up in rebuttal to address what the Secretary said about fractures. I mean, I don't think the Secretary said that there's... In fact, I think the Secretary, the government, acknowledged that there is a medical examination report saying that. The problem for you is that ultimately the board and the court didn't rely on this report, they relied on other reports. I understand that. But the problem is that Dr. D'Agostini's reports are tainted by the absence of his... The absence of service medical records taint his report. And because he can't see a fracture, they're going to taint... It taints the entire report because it's an inaccurate factual predicate. Okay. We have your argument. Thank you, Your Honor.